## Deford & Co. *versus* Reynolds.
## Deford & Sons *versus* The Same.

A dormant partner may retire from a firm, without giving notice of his withdrawal, and thenceforth is no longer liable for debts which the firm may contract.

But one who is a member of a partnership trading under the firm name of R. M. & Co., does not become a dormant partner, by reason of the creditor being ignorant of the name of the copartner of R. M.

Whether or not a creditor had actual notice of the dissolution of a partnership, is a question of fact for the jury; and it is not error, to decline giving them a binding instruction, that a certain course of dealing with the remaining partner, was evidence from which they *ought* to infer actual notice of the dissolution; especially, where there is some evidence of want of notice.

A party cannot assign error in the charge of the court below, upon a point which has been rendered immaterial by the verdict of the jury.

ERROR to the Common Pleas of *Franklin county*.

These were two actions of *assumpsit*, the first, by Benjamin Deford and Albert L. Webb, trading under the firm of B. Deford & Co. against Hugh W. Reynolds, as surviving partner of the firm of R. McCulloh & Co.; and the other, by Benjamin Deford and Isaac Deford, trading under the firm of B. Deford & Sons, against the same defendant, to recover balances alleged to be owing to the plaintiff firms respectively by R. McCulloh & Co. The jury were sworn in the first case only, and it was agreed by the counsel of the respective parties, that the matters in variance in both suits should be submitted to the jury sworn in that case; that the defendant should be charged with all sums legally due by him to either of the firms, and be allowed all legal credits.

In 1851, Hugh W. Reynolds, the defendant below, entered into partnership at Chambersburg, Pennsylvania, with Robert McCulloh, since deceased, to carry on the tanning business, under the firm name of R. McCulloh & Co. In the same year, the firm of R. McCulloh & Co. opened an account with Messrs. Deford, who were leather merchants in the city of Baltimore; purchasing large quantities of hides, oil, &c., from them, generally, on six months' credit, and returning the hides when tanned, to the Messrs. Deford, to be sold on commission. During the continuance of the partnership between McCulloh and the defendant, the plaintiffs did not know who was McCulloh's partner.

The firm of R. McCulloh & Co. was dissolved, by consent, on the 7th April 1853, when Mr. Reynolds retired from the firm, and public notice of the dissolution was given in the Chambersburg newspapers, on the 14th of the same month. The business was

[Deford & Co. *v.* Reynolds.]

subsequently carried on by Robert McCulloh alone; he retaining all the firm property, and agreeing to .pay the firm debts.

Prior to this time, all the drafts drawn by the plaintiffs were upon the firm of R. McCulloh & Co.; and their letters acknowledging the receipt of leather sent to them for sale, were addressed to the firm. But from the time of the dissolution, the plaintiffs drew upon McCulloh alone, and their letters were addressed to him individually. Their account, however, was kept with the firm until the 31st December 1853; and their clerk testified that he did not know of the dissolution until that date.

At the time of the dissolution, the firm of R. McCulloh & Co. was indebted to the plaintiffs in the sum of about $3942.56; but this was more than liquidated, before the death of Robert McCulloh, by the proceeds of leather consigned to the plaintiffs for sale, by McCulloh, and by them credited to the account of the firm, as appeared by the accounts currrent.

Robert McCulloh continued to deal with the plaintiffs, purchasing hides and oil from them, and consigning large quantities of leather to them for sale, until April 1854, when he died, being largely in their debt, and his estate was found to be insolvent. After the death of McCulloh, the plaintiffs combined all their accounts into one, embracing the dealings of R. McCulloh & Co. and those of McCulloh alone, subsequent to the 7th April 1853, which they presented to McCulloh's administrator, and claimed and received a dividend out of his estate, in November 1854, amounting to $1472.

On the trial of the cause, the defendants' counsel presented the following points, upon which they requested the court to charge the jury in the case of B. Deford & Co. *v.* Reynolds :—

1. That if they believe from the evidence, that the plaintiff rendered an account current to R. McCulloh & Co. for the year 1852, which account includes the items upon which this suit is brought, then the credit contained and allowed in such account will be appropriated by law, according to the order of the items of the account; the first item on the debit side of the account being discharged or reduced by the first item on the credit side, and the plaintiff ought not to recover.

2. That if they believe from the evidence, that B. Deford & Sons succeeded B. Deford & Co. in business, and that in rendering their account to R. McCulloh & Co. the plaintiff continued the account in the same manner as before, and as if there had been no alteration in the firm, then whatever balance was due at the time of such change in the firm, from R. McCulloh & Co. to B. Deford & Co., would be gradually diminished by the sums paid in subsequently by the debtors, and particularly would such be

[Deford & Co. *v.* Reynolds.]

the case, if the different firms were composed by one or more of the same individuals.

They also presented the following points, in the case of B. Deford & Sons *v.* Reynolds:—

1. That if they believe, from the evidence, that the defendant was not known to the plaintiff as a member of the firm of R. McCulloh & Co., he might withdraw at any time without being required to give notice of the dissolution of the partnership, and is only chargeable for debts contracted during the time he was actually a partner.

2. That if they believe, from the evidence, that there was an actual dissolution of the partnership of R. McCulloh & Co., and that after this time, Robert McCulloh purchased hides of the plaintiffs, and drew drafts upon them, and received bills of the sales of leather, and all in the name of Robert McCulloh, they ought to infer from such facts and circumstances, notice of the dissolution of the partnership of R. McCulloh & Co.

3. That if they believe, from the evidence, that at the time of the dissolution of the partnership, Robert McCulloh purchased the stock in the yard, and assumed the payment of the debts of the firm; this constitutes such stock, firm assets, which should first be applied to the payment of firm debts, to wit, to the liquidation of the balance due from R. McCulloh & Co. to B. Deford & Sons, at the date of the dissolution of said partnership.

4. That if they believe, from the evidence, that at the time the defendant retired from the firm of R. McCulloh & Co., there was a balance in favour of the plaintiffs, the said defendant would be liable for such balance; but if the accounts were continued in the same manner as before, without any new account being opened against Robert McCulloh alone, the balance for which the defendant was so liable would be diminished by every payment afterwards made by Robert McCulloh (supposing such payments not to be appropriated to the discharge of any specific item) the first item on the debit side of the account being discharged or reduced by the first item on the credit side.

5. That if they believe, from the evidence, that the plaintiffs in the statement of their account, as communicated to Robert McCulloh, after the dissolution of the partnership, or their account as filed in court, upon which this suit is brought, exhibits a balance against R. McCulloh & Co., and that this balance is the result or product of the aggregate amount of the items on the credit side of the account, deducted from the aggregate amount of the items on the debit side, then there has been, on the part of the plaintiffs, an appropriation or application of the credits contained in such accounts to the payment or discharge of the debts sustained on

[Deford & Co. *v.* Reynolds.]

the debit side of said account, sufficient at least to fully pay and satisfy the balance due to the plaintiffs from R. McCulloh & Co., at the date of the dissolution of the partnership.

6. That if they believe, from the evidence, that the plaintiffs have made an appropriation of the money arising from the sales of leather made after the dissolution of the partnership of R. McCulloh & Co., to the debts of said firm, they cannot, particularly after having communicated such appropriation to Robert McCulloh, change it without the consent of the defendant.

7. That if they believe, from the evidence, that the credits allowed R. McCulloh & Co., in the account sued on, amount to a greater sum than what has been proven against R. McCulloh & Co., in the debit side of the account, then they ought to find for the defendant.

The court below (KIMMELL, P. J.) charged the jury as follows :—

" The plaintiffs claim to recover in this case the sum of $2898.11. The defendant admits that he entered into partnership with Robert McCulloh in the tanning business in the year 1851; that they were mutual partners; and that the firm name was R. McCulloh & Co. The firm continued to do business until the 14th of April 1853, or about that period, when it was dissolved by mutual consent, and the dissolution advertised in the newspapers of the borough of Chambersburg. After the dissolution the business was continued by Robert McCulloh alone. It is alleged here, by defendant, that by the agreement of dissolution, McCulloh released all the firm property and assumed all the firm debts.

"In 1851, the firm of R. McCulloh & Co. opened an account with the plaintiffs, who are leather merchants in the city of Baltimore. They purchased hides, oil, and other articles connected with their business, and the clerk says that they were purchased at six months, and that it was a part of the agreement that after tanning the hides, they were to be returned to the plaintiffs, who were to receive and sell the leather, on commission, within six months, and allow a credit for the amount of the sales. The partners acted, it is said, under this arrangement until the dissolution of the firm of R. McCulloh & Co., in April 1853, and the plaintiffs allege that the business was continued by Robert McCulloh, and the purchases made by him, from their firm, on the credit of the firm of R. McCulloh & Co., without notice of the dissolution, up to 31st December 1853. The plaintiffs never changed their books, from the time the account with the firm of R. McCulloh & Co. was opened, until the 31st December 1853, although the members of the firm changed once or twice; but it is agreed, that you shall consider the whole account as if there had been no change in the members of the firm, charging the defendant with the

[Deford & Co. *v.* Reynolds.]

sums legally due from him, and allowing all legal credits. The defendant says the plaintiffs had actual notice of the dissolution. Robert McCulloh died in 1854, and his estate was found to be insolvent. His administrator paid on the whole indebtedness $1472.

"There is no controversy here as to the correctness of the plaintiffs' account, but the defendant says that he cannot be held for the value of the goods and stock furnished to Robert McCulloh, after the dissolution of the firm. At the time of the dissolution of the firm of McCulloh & Co., the account stood as follows:—

| | |
|---|---|
| Charges . . . . . . . . . | $3990.69 |
| Credits . . . . . . . . . | 649.64 |
| Balance due plaintiffs . . . . | $3341.05 |

"The defendant says that this balance was afterwards paid by Robert McCulloh, and that the plaintiffs have credited on their books to McCulloh & Co. a sum greater than the indebtedness. The account as claimed by plaintiffs stands thus:—

| | | |
|---|---|---|
| Charges to December 31st 1853 . . . . | | $12,787.52 |
| Credits . . . . . . . . | | 9,141.40 |
| Balance . . . . . . | | 3,646.12 |
| Add interest to the present time . . . . | | 1,011.15 |
| | | $4,657.27 |
| Credit amount paid by Trostle . . | $1470.00 | |
| Add interest to present . . . | 313.80 | |
| | | 1,783.80 |
| Balance due now . . . . . . | | $2,873.47 |

"The defendant has requested instructions on seven points.

"Answer to the first point. The defendant admits he was a partner in the firm of R. McCulloh & Co., from 1851 to the period of the dissolution in April 1853, but says that if it was not known to the plaintiffs that he was a partner, they were not entitled to any notice of the dissolution, and that therefore he cannot be charged with the subsequent purchases of Robert McCulloh. We instruct you that, if you believe the defendant was an open partner of the firm of R. McCulloh & Co., and that the plaintiffs sold the goods and furnished the stock on the credit of the company, then the liability of the defendant did not cease with the dissolution, although the plaintiffs may not have known who were the members of the firm. It is scarcely to be expected that the plaintiffs, doing

business in Baltimore, should know who composed the firm of R. McCulloh & Co. in Chambersburg. But if the goods were sold to Robert McCulloh, on his own credit, or if Benjamin Deford, or any of the partners, had actual notice of the dissolution, from the time of such notice the defendant's liability ended.

"Answer to the second point. Instead of the word 'ought,' we say you *may* infer, from the facts and circumstances in the case, that the plaintiffs had actual notice of the dissolution. The accounts of this firm of R. McCulloh & Co. having extended to the day of the dissolution in April 1853, the plaintiff was entitled, as we have already said, to actual notice of the dissolution, and you may infer, from the facts and evidence in the case, that such notice was given; and if such notice was given, from that time the responsibilities of the defendant ceased. The defendant relies mainly, for the establishment of this position, on the testimony afforded by the books of the plaintiffs, and the letters and drafts. He argues that prior to the dissolution, the firm name was always used in the business transactions between the firms, but that thereafter, the entries on the books are made against the firm only for small items, commission, &c., whilst the large items for hides and oil are all charged to Robert McCulloh; and that the drafts were all in the name of Robert McCulloh alone, and, from this evidence, he comes to the conclusion that the plaintiffs had actual notice. The clerk was not able to say how the difficulties in the entries occurred; that he made many of the entries himself; that the goods were furnished on the faith of the firm. The counsel contend that there could not have been such notice, because the credits are all entered to R. McCulloh & Co., and that entries are made against the company down to 31st December 1853. The question of fact is for the jury on all the evidence in the case.

"Third point. As there is no evidence in the case to show that any part of the stock in the yard at the dissolution was forwarded to the plaintiffs by R. McCulloh, it is not required that we shall answer this point.

"The remaining points from four to seven. The debtor has the right to say how the credits shall be appropriated, and when he omits to do it, the creditor may make the application. If R. McCulloh directed the funds to be applied to the indebtedness created by him after the dissolution, then the plaintiffs could not direct otherwise; but if he was silent on the subject, the creditor had the right to apply them to the balance due at the dissolution, and having done so, no change can be made without the defendant's consent. In this latter event, that balance would be extinguished. The accounts show the disposition made by the plaintiffs of the credits—they are all entered to R. McCulloh & Co. If, as is assumed, McCulloh, by their agreement of dissolution, was to take the firm property and pay the firm debts, he may have considered and

[Deford & Co. v. Reynolds.]

treated the whole indebtedness as his own. Whether there is any evidence of such agreement we submit to the jury. The Trostle credit was appropriated to the whole claim of plaintiffs—you will allow the defendant the benefit of this payment, as of the debt on which it was made; and if you believe, from your examination of the case, that the plaintiffs are entitled to recover, you will allow all the credits to the defendant that have been proved in the case."

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiffs for $1435.43, he sued out this writ, and here assigned the same for error.

*H. W. Reynolds*, the plaintiff in error, *in propriâ personâ*, and *Nill & McCauley*, for the plaintiff in error. The defendant was a dormant partner, as to the plaintiffs, who had no knowledge of his being a member of the firm: Armstrong v. Hussey, 12 *S. & R.* 316; Kelley v. Hurlburt, 5 *Cow.* 536; *Collyer on Partnership*, § 120. And therefore, it was unnecessary to give them notice of his withdrawal from the firm.

But there was abundant evidence in the case to show conclusively that they had actual notice of the dissolution; and the court below ought so to have instructed the jury: *Collyer on Partnership* 486; 3 *Campb.* 147.

*Sharpe & Reilly*, *McClellan & McClure*, and *T. B. Kennedy*, for the defendants in error.—Whether or not the defendant was a dormant partner, was a question of fact for the jury: *Collyer on Partnership*, § 536; Goddard v. Pratt, 16 *Pick.* 429; Armstrong v. Hussey, 12 *S. & R.* 315. But a dormant partner is one whose name and transactions as a partner are professedly concealed from the world; not one whose name may be unknown to a particular creditor: *Collyer on Partnership*, § 4; *Story on Partnership*, § 80; United States Bank v. Binney, 5 *Mason* 176; Goddard v. Pratt, 16 *Pick.* 425.

The court could not have charged as requested in the defendant's second point, without taking from the jury a question about which there was conflicting evidence. If the defendant was not a dormant partner, it was necessary to prove actual notice of the dissolution: *Story on Partnership*, § 161; *Collyer on Partnership*, § 533; Watkinson v. Bank of Pennsylvania, 4 *Wh.* 484; 2 *Johns.* 594; 3 *Day* 323; 6 *Johns.* 147; 6 *Cow.* 16.; 17 *Wend.* 526; Pitcher v. Burrows, 17 *Pick.* 365; Mitchum v. Bank of Kentucky, 9 *Dana* 166; Southwick v. Allen, 11 *Verm.* 75; Brown v. Clark, 2 *Harris* 476.

The opinion of the court was delivered by

STRONG, J.—Sometime in the year 1851, Reynolds, the defendant below, entered into partnership with Robert McCulloh, since

deceased, under the firm name of R. McCulloh & Co. In the same year, the new firm opened an account with the plaintiffs below, who were leather merchants, doing business in the city of Baltimore, and became indebted to them in a considerable sum. On the 7th of April 1853, the firm of R. McCulloh & Co. was dissolved by the mutual consent of the partners, and notice of the dissolution was published in the newspapers of Chambersburg, where the firm had principally transacted its business. There is, however, no direct evidence that actual notice of the dissolution was given to the Messrs. Deford, with whom the firm had been dealing. Robert McCulloh continued the business after the retirement of Mr. Reynolds, made payments to the plaintiffs, and purchased from them hides, oil, &c., until December 31st 1853. He died in April 1854, and this is a suit against Mr. Reynolds as surviving partner to recover the balance due to the plaintiffs on the 31st of December 1853.

The first contested question is, whether Reynolds is liable for any portion of the debt contracted after April 7th 1853, when the firm of R. McCulloh & Co. was dissolved? The solution of this depends upon the answers to be given to two other inquiries: first, whether, in this case, the law required notice to be given to the Messrs. Deford, in order to secure the retiring partner against liability for debts contracted after his retirement; and secondly, whether, if such notice was necessary, it was in fact given, or, what is equivalent, whether the creditors had knowledge of the dissolution before the debt was contracted. It is to the first of these minor questions that the earlier part of the argument of the plaintiff in error is addressed, and to this was directed the first point propounded by him to the court below. That point was that, if the jury believed from the evidence that the defendant was not known to the plaintiffs as a member of the firm of R. McCulloh & Co., he might withdraw at any time, without being required to give notice of the dissolution of the partnership, and is only chargeable for debts contracted during the time he was a partner. To this the court replied, that if the jury believed the defendant was an open partner in the firm of R. McCulloh & Co., and that the plaintiffs sold the goods, and furnished the stock on the credit of the company, then the liability of the defendant did not cease with the dissolution, although the plaintiffs may not have known who were the members of the firm.

The rule doubtless is, that an unknown dormant partner may retire from the firm without giving notice of his retirement, and thenceforth be no longer liable for debts which the firm may incur. Having ceased to be a partner in fact, he is not a party to the contract which creates the debt; and, being unknown, he has not encouraged the creditor to rely upon his responsibility. But was Reynolds a dormant partner? And could the court, as matter of

[Deford & Co. v. Reynolds.]

law, instruct the jury that he was, if they believed he was not known by the plaintiffs to be a partner? Does the mere fact that one selling goods to a firm is unacquainted with the names of all the persons who compose it, establish that those are dormant partners as to him whose names are unknown? It is perhaps not easy to define what constitutes a dormant partner in all cases. The word is sometimes used in opposition to *active*, and, at other times, as contradistinguished from *ostensible* or *known*. This case does not require us to attempt a precise definition. McCulloh and Reynolds were in partnership, it is admitted, until April 7th 1853. They were the only partners. They transacted business under a firm name that represented to those dealing with them that some other than R. McCulloh was responsible. The vendor of goods, of course, gave credit, not to McCulloh alone, but to him and whatever other persons were embraced within the company. He may not have known the name of the person included under the description "& Co.," and yet have known that the partner not named was the most responsible. Indeed, he might have been the active partner, and yet unknown by name to the creditor. Now suppose that the Messrs. Deford had known that there was a partner of Robert McCulloh, an open partner, known as such to the community at Chambersburg. Suppose they had known that he was the active agent in transacting most of the business of the firm, and that he alone was a man of property, but had not been made acquainted with the fact that this partner was Hugh W. Reynolds, can it be said that in selling to the firm, they trusted McCulloh alone, and gave no credit to Reynolds? If not, then the reason given why a dormant partner is not liable after his retirement without notice, is not applicable to this case. Then credit was given to Reynolds under the name "& Co.," and the same reason exists for his continued liability as there is for the liability of any partner who has retired without notice.

In Mitchell *v.* Dale, 2 *Harr. & Gill* 172, it was said by MARTIN, J., that every partner is dormant, unless his name appear in the firm, "*or is embraced under general terms, as the name of one of the firm and company.*" Without assenting to this as universally true, it may be said, that its obvious implication is, that if one is embraced in the general description, the name of one partner and company, his is not a case of dormant or secret partnership. Collyer, in his treatise, sect. 4, defines a dormant partner to be one "whose name and transactions as a partner are professedly concealed from the world." The only object which such an one can have in remaining dormant or secret, is, that credit may be given to the ostensible partners alone, and not to him. With such a purpose or object, doing business under the name of one partner *and company*, is inconsistent. It can be nothing less than an invitation to the public to give credit to more than the single

[Deford & Co. *v.* Reynolds.]

partner named.  Entertaining such views, we are of opinion that there was no error in the answer of the court below to the defendant's first point.  Whether he was a dormant partner or not, was a question for the jury, and, trading as he did under the firm name of R. McCulloh & Co., the solitary fact that he was not known by the plaintiffs to be the company, was not sufficient to enable the court to say that his liability ceased at the dissolution of the firm, without notice to those who had dealt with it.  If he was an open partner, and the credit was given to the company, he was still bound.

The next question in the case is, whether the Messrs. Deford had notice in fact, of the dissolution of the firm, before the debts incurred between April 7th 1853 and December 31st 1853 were contracted.  This, of course, was for the jury.  We are strongly impressed with the belief that their finding has done injustice to the defendant, and were it in our power to interfere for that reason, we would gladly do so.  But it is not.  The remedy for mistakes of the jury is exclusively in the court below.  We can do no more than inquire whether the question was properly presented to them.  There was evidence on the trial that, after the actual dissolution of the firm, in April 1853, most of the charges in the plaintiffs' books were made against R. McCulloh, that the drafts upon them were signed R. McCulloh, and that bills of leather were receipted as coming from him alone.  In view of this evidence, the defendant asked the court to charge the jury that, "if they believed from the evidence that there was an actual dissolution of the partnership of R. McCulloh & Co., and that after this time Robert McCulloh purchased hides of the plaintiffs, and drew drafts upon them, and received bills of the sales of leather, and all in the name of Robert McCulloh, they ought to infer from such facts and circumstances notice of the dissolution of the partnership of R. McCulloh & Co."  This was asking for binding instructions.  That these facts were very cogent evidence of notice of the dissolution cannot be denied, and we think it should have outweighed, in the minds of the jury, the other evidence in the cause that the Messrs. Deford had no notice.  There was, however, some such other evidence, and the jury alone could determine its weight.  It was proved, that some charges were made to the company of R. McCulloh & Co., and that the credits were given to the firm until December 31st 1853.  The book-keeper of the plaintiffs also testified that they had no notice until that time, that he certainly would have known it if they had.  The testimony of the clerk was, indeed, of little moment, for he could only speak of his want of knowledge that his employers had notice, but it was for the jury to pass upon all the evidence.  It was not for the defendant to select a part and ask the court to instruct the jury that such part proved notice.  The court sub·

mitted all to the jury, not, it is true, with the instruction that they "*ought*" to infer notice, but that they *might*. We think they could not have given the binding direction which the defendant requested.

The third assignment of error must fail, for the reason that the point propounded assumed that of which there was no evidence in the cause.

The fourth assignment relates to the answers given to the fourth, fifth, sixth, and seventh points proposed by the defendant. They were all substantially answered in the affirmative. It is impossible that the defendant was harmed by anything that was said by the court to the jury respecting the application of payments. Under the instruction given, there could have been no verdict for the plaintiffs, unless the jury had found that Reynolds was not a dormant or secret partner, and that the plaintiffs had no knowledge of the dissolution until December 31st 1853. In other words, they must have found that, as between the plaintiffs and defendant, the partnership continued until that time. This remark is applicable also to the fifth assignment. And even if the two points filed in the other suit were not in substance affirmed, an answer to them was rendered unnecessary by the agreement between the parties.

Upon the whole, we have failed to discover any error in this record. We are therefore constrained, though reluctantly, to affirm the judgment.

The judgment is affirmed.